IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNAMMA JOB,

             Plaintiff,

v.

ILLINOIS DEPARTMENT OF HUMAN SERVICES, ELIZABETH SCHMIDT, ELLEN HODGE, KAREN FINLEY, WAVERLY ROBINSON, and DONNA WALLS,

             Defendants.

Civil Action No.: 08 C 3838

Suzanne B. Conlon, Judge

## MEMORANDUM OPINION AND ORDER

Annamma Job sues her employer the Illinois Department of Human Services ("IDHS") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and IDHS employees Elizabeth Schmidt, Ellen Hodge, Karen Finley, Waverly Robinson, and Donna Walls under 42 U.S.C. §§ 1981 and 1983. Job alleges defendants discriminated against her with respect to the terms of her employment because she is Asian Indian, retaliated against her for complaining about the discrimination, and subjected her to a hostile work environment.[1] Defendants move for summary judgment. For the reasons set forth below, the motion is granted.

---

[1] Job alleged the individual defendants violated her freedom of speech in violation of § 1983. She abandons the argument in her summary judgment response. She inexplicably argues in her response that she states a claim for intentional infliction of emotional distress. Her intentional infliction of emotional distress claim was dismissed because it is preempted by the Illinois Human Rights Act, 775 ILCS 5/8-111(D). Dkt. 56.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 short numbered paragraphs; each paragraph must cite affidavits, the record, and other supporting materials. Local Rule 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials. Local Rule 56.1(b)(3). Failure to comply with this rule results in admission of the facts. Local Rule 56.1(b)(3)(c); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The opposing party may also submit a statement of supplemental material facts, not to exceed 40 short numbered paragraphs, that require summary judgment denial. Local Rule 56.1(b)(3)(c).

Rule 56.1 requires *short* paragraphs (one or two individual allegations) and *references* to evidence. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.). Rule 56.1 is not a forum for factual or legal argument. *Id.* at 585. In violation of the rule, Job repeatedly argues about and pastes large chunks of deposition testimony into her response to defendants' statement of material facts. *See, e.g*, Pl. Resp. ¶¶ 14-16, 18, 22-24, 41, 46, 63-64, 71-73. Rule 56.1(b)(3) requires more than a general denial to rebut a movant's factual allegations; the movant must cite evidentiary materials justifying the denial. *Malec*, 191 F.R.D. at 584. Job responds to defendants' statements of facts by disputing all or part of the statement, but relying on nonresponsive evidence and unsupported, unintelligible factual characterizations. *See, e.g*, Pl. Resp. ¶¶ 37, 41, 46, 60-61, 63-64, 65, 67, 71-73. Rule 56.1 statements do not abrogate a party's

obligation to recite and argue its version of the facts in its supporting memorandum. *Malec*, 191 F.R.D. at 585. Job's supporting memorandum provides an abbreviated discussion of the facts without incorporation into legal argument. The court considers Job's submissions only to the extent they comply with Rule 56.1's requirements.

## II. Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. IDHS operates the Ann M. Kiley Developmental Center ("Kiley Center"), which provides residential and health services and training to developmentally disabled individuals. Defs. Facts ¶ 11. Job has been employed as a residential service supervisor for the Kiley Center since December 2005. *Id.* ¶ 5. She unsuccessfully applied for a promotion to habitation program coordinator in April 2005. *Id.* ¶¶ 59-61. Elizabeth Schmidt was Job's supervisor from January 2006 to May 2007. *Id.* ¶ 7. In June 2006, Job requested time off for a child care issue. Schmidt replied: "[Y]ou Indians are too spoiled" and asked "[w]hy can't you Indians . . . throw your children in the summer camp just like people do here?" Defs. Ex. C: Job Dep. Tr. at 24. Schmidt disputes the statement. Defs. Ex. E: Schmidt Aff. ¶ 22. Job unsuccessfully applied for a promotion to administrative assistant in October 2006. Defs. Facts ¶¶ 62-64.

On December 18, 2006, Job witnessed sexual misconduct between Schmidt and IDHS employee Chris Burns in Schmidt's office. Job Dep. Tr. at 32-33. Schmidt attests Job misunderstood the scene; Burns hugged Schmidt because she had just received an upsetting telephone call. Schmidt Aff. ¶ 4. Two days later, Schmidt asked Job not to report the incident; Schmidt denies the request. Job Dep. Tr. at 53-54; Schmidt Aff. ¶ 5. In early January 2007, Kiley Center facility director Ellen Hodge interviewed Job about the incident; Job denied

3

witnessing inappropriate behavior between Schmidt and Burns. Defs. Facts ¶¶ 6, 13-16. Job states Hodge threatened her with termination if she reported Schmidt and Burns' misconduct. Job Dep. Tr. at 113-14. In January 2007, Schmidt gave Job an unexcused absence for failing to document an absence. Defs. Facts ¶ 52. Job contends the absence was excused: her children had the flu as demonstrated by a school letter. Pl. Ex. B. At some point, Schmidt told Job, "if you don't have a baby-sitter, you just do one thing, you just quit the job." Job Dep. Tr. at 49. Schmidt rated Job "acceptable" in her January 20, 2007 performance evaluation. Defs. Facts ¶ 37.

On February 10, 2007, Schmidt and Job argued about her unexcused absence. *Id.* ¶ 18. That day, Job filed an unusual incident report about Schmidt and Burns' sexual misconduct, alleged a facility "cover-up," and reported Schmidt improperly denied her overtime and authorized absences. *Id.* ¶¶ 29, 52; Defs. Ex. C(5); Pl. Facts ¶ 6. Job reiterated the allegations in a February 15, 2007 letter to the IDHS Secretary. Defs. Ex. C(6). During the internal investigation, Job was placed on paid administrative leave. Pl. Add. Facts ¶ 20; Defs. Exs. C(15) and (16). Schmidt and Burns were instructed to remain in their offices and be escorted if required to visit another area. Defs. Facts ¶ 20. On March 1, 2007, Job filed a race, color, and national origin discrimination, and retaliation complaint with the IDHS Bureau of Civil Affairs; she alleged she was reassigned after reporting employee misconduct. *Id.* ¶ 31; Defs. Ex. C(7). Following the internal investigation, Job returned to work on April 27, 2007; she and Burns were assigned to other units, and no longer reported to Schmidt. Defs. Facts ¶ 26. It is undisputed Job's job title, duties, and pay remained the same. *Id.* ¶ 28; Pl. Resp. ¶ 28. Neither party details the internal investigation findings.

On October 12, 2007, Job's new supervisor Karen Finley rated Job "acceptable" for her December 2006 to November 2007 performance; she received a $100.00 monthly raise. Defs. Facts ¶¶ 9, 38. Job filed an EEOC charge on May 7, 2008; she alleged IDHS discriminated against her on the basis of her national origin and in retaliation for her March 1, 2007 discrimination complaint. Defs. Ex. B. Job received unauthorized absences and "dock time" on April 9, 2008, September 19, 2008, May 20, 2009, and June 19, 2009. Defs. Facts ¶¶ 54-58. She was denied overtime in December 2008. *Id.* ¶ 45.

Job's next performance evaluation was December 24, 2008; Finley rated her "acceptable." *Id.* ¶ 39. At an unidentified time, Job met with Finley to request money from patients' accounts for their personal items. Finley told Job, "[y]ou Indians . . . don't know how to spend the money." Pl. Facts ¶ 29. Finley repeated the comment four or five times. *Id.* ¶ 30. Finley disputes making the comments. Defs. Ex. F: Finley Aff. ¶¶ 22, 25. At some point, Job was insulted by a Mr. Waverly [Robinson] for threatening and insulting [her] in front of her staff by criticizing [Job] for not having decorations in her home and gave her a time frame to get it done." Pl. Facts ¶ 15. Robinson attests he admonished Job for failing to ensure her assigned home was in proper condition before a walk-through, and advised of a future walk-through. Defs. Ex. G: Robinson Aff. ¶¶ 7, 9-10.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is warranted only if the pleadings, discovery, and disclosure materials on file, and any affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cracco*, 559 F.3d at 633.

5

Defendants have the initial burden of demonstrating they are entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). If defendants meets their burden, Job must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Kramer*, 384 F.3d at 861. The court construes all facts and draws all reasonable inferences in the light most favorable to Job. *Cracco*, 559 F.3d at 633. A genuine issue of material fact exists if the evidence is sufficient to support a reasonable jury verdict in Job's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

## II. National Origin Discrimination

The methods of proof and elements of Title VII and § 1981 discrimination claims are essentially the same. *Paul v. Theda Med. Ctr.*, 465 F.3d 790, 794 (7th Cir. 2006). Job may prove the discrimination claim either directly or indirectly. *Id.* Job proceeds under the indirect method of proof. Under the indirect method, Job must establish a *prima facie* case of discrimination by proving that she is a member of a protected class; her job performance met IDHS' legitimate expectations; she suffered an adverse employment action; and a similarly situated employee outside of her protected class was treated more favorably. *Id.*

If Job demonstrates a *prima facie* case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If defendants satisfy this burden of production, Job must establish there is a genuine issue of material fact as to whether defendants' reason is merely a pretext for unlawful discrimination in order to survive summary judgment. *Id.*

Defendants argue Job fails to establish a *prima facie* case because she did not suffer an adverse employment action, and fails to present evidence that a similarly situated employee

6

outside her protected class was treated more favorably. An adverse employment action must be materially adverse, not a mere inconvenience or alteration of job responsibilities. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Adverse employment actions include termination of employment, a demotion evidenced by a decrease in salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Id.* at 465-66.

Job argues generally "the facts above have shown that [she] was subjected to adverse employment actions which had adverse effects on her performance and career opportunities . . . ." Viewing the evidence and reasonable inferences in the light most favorable to Job, she fails to present a genuine issue of material fact that she was subjected to an adverse employment action. Job characterizes her performance evaluations as negative. She consistently was rated "acceptable," which is not necessarily negative. Defs. Facts ¶ 35-39. In addition, a poor performance evaluation unaccompanied by a tangible job consequence is not an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996). Job presents no evidence her performance evaluations affected her job responsibilities, salary, or other benefits. Indeed, she received a raise in October 2007. Defs. Facts ¶ 38.

Job presents no genuine issue of material fact that her paid administrative leave during the internal investigation and transfer to another unit after the investigation constitute adverse employment actions. It is undisputed Job received her full salary and benefits while on leave. *Id.* ¶ 27. It is undisputed her job title, duties, and pay remained the same when she was transferred to another unit after the investigation. *Id.* ¶ 28; Pl. Resp. ¶ 28.

Job presents evidence she was not promoted. A failure to receive a promotion may constitute an adverse employment action. *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). It is undisputed that a separate agency, the Department of Central Management Services, rated the candidates, and Job did not receive the highest rating (in one instance, she was rated unqualified). Defs. Facts ¶¶ 59-63. Job's unsupported, unintelligible speculation that Hodge, Schmidt, and Kiley Center human resources and labor relations director Donna Walls made the promotion decisions (Pl. Add. Facts ¶¶ 23, 24) fails to create a genuine issue of material fact that failure to promote Job constituted an adverse employment action. It is undisputed Job received all training necessary to perform her job duties, and that Schmidt suggested computer and supervisory training in January 2007. Defs. Facts ¶¶ 42-43.

Job contests failure to receive overtime. *Id.* ¶ 45. Facility director Waverly Robinson attests Job was denied overtime because she did not timely submit the required paperwork. Robinson Aff. ¶ 5. Job claims she was denied overtime because Finley could not find the paperwork on Job's desk, and Finley screamed at her when Job requested the overtime. Job Dep. Tr. at 168-69. In addition, Job disputes the bases for her unauthorized absences and "dock time." Defs. Facts ¶¶ 54-58. She fails to present a genuine issue of material fact that failure to receive overtime, unauthorized absences, or "dock time" amount to adverse employment actions. She provides no evidence she was entitled to overtime, or that receipt of unauthorized absences or "dock time" resulted in discipline or reduced salary. Job presents no genuine issue of material fact that she was subjected to an adverse employment action.

Job fails to present evidence that a similarly situated employee outside her protected class was treated more favorably. To qualify as similarly situated, the employee must be directly

comparable in all material respects. The employee must have dealt with the same supervisor, been subject to the same standards, and engaged in similar conduct without differentiating or mitigating circumstances. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690-91 (7th Cir. 2008). Job attests employees Kiana Kynard, Tenesha Wilson, Kim Jones, Chuck Dorsey, Sarah Lindsey, and George Medina "abuse[] time, come in late, excessive calling in, tardy for work, and takes excessive break time, Ms. Finley takes no disciplinary action because they are Ms. Finley's favorites (Too much favoritism and racism)." Pl. (unnumbered) Ex.: Job Decl. ¶ 5. Job's unintelligible, unsupported speculation about other employees does not establish a genuine issue of material fact that a similarly situated employee outside her protected class was treated more favorably.

Even if Job demonstrates a *prima facie* case of discrimination, she does not respond to defendants' legitimate, nondiscriminatory reasons for the alleged adverse employment actions. IDHS' internal reviews, hiring and placement decisions, and implementation of attendance polices are precisely the kind of business decisions over which a court does not act as a "super-personnel department." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). Job presents no evidence or substantive argument that defendants' reasons are merely a pretext for unlawful discrimination. Defendants are entitled to summary judgment on the national origin discrimination claim.

### III. Retaliation

Job may prove a Title VII or § 1981 retaliation claim either directly or indirectly. *Stephens*, 569 F.3d at 786. Job ostensibly proceeds under the direct method of proof. To establish retaliation under the direct method, she must show she engaged in statutorily protected

9

activity, suffered a materially adverse employment action, and there is a causal connection between the protected activity and adverse action. *Id.* Under the indirect method of proof, the first two elements remain the same, but rather than proving a direct causal link, Job must show she was performing her job satisfactorily, and defendants treated her less favorably than a similarly situated employee who did not complain of discrimination. *Id.* at 786-87. If Job establishes a *prima facie* case under the indirect method, defendants must articulate a nondiscriminatory reason for the adverse employment action; if they do, Job must demonstrate the reason is pretextual. *Id.* at 787.

As discussed, Job presents no genuine issue of material fact that she was subjected to an adverse employment action, was treated less favorably than similarly situated employees, or that the reasons for defendants' decisions are pretextual. Summary judgment in defendants' favor on the retaliation claim is appropriate.

## IV. Hostile Work Environment

To prove a hostile work environment claim, Job must establish she was subjected to unwelcome harassment; the harassment was based on her national origin; the harassment was severe and pervasive enough to alter the conditions of her employment and create a hostile and abusive work environment; and there is a basis for employer liability. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). Harassment must be subjectively and objectively offensive. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008).

Job's argues she was subjected to humiliating and degrading comments; she cites but improperly does not discuss five of her Local Rule 56.1 statements of additional fact. *Malec*, 191 F.R.D. at 585. The comments include Schmidt's statement that "Indians are too spoiled"

and should "throw [their] children in the summer camp just like people do here," as well as her advise to Job to quit if she does not have child care. Job Dep. Tr. at 24, 49. In addition, Finley told Job on several occasions "Indians . . . don't know how to spend the money" (Pl. Facts ¶¶ 29-30), and Robinson insulted Job about the appearance of her group home (Pl. Facts ¶ 15). The comments are disputed, but the dispute may not be resolved on summary judgment. Viewing the evidence and reasonable inferences in the light most favorable to Job, she fails to establish a genuine issue of material fact that she was subjected to a hostile work environment. Robinson's exercise of routine disciplinary and administrative functions does not amount to harassment. *Hilt-Dyson*, 282 F.3d at 464. Schmidt and Finley's derogatory comments about Indians were isolated events that occurred over a two-year period; Job presents no evidence the comments were physically threatening. She does not present a genuine issue of material fact that she was subjected to severe or pervasive conduct sufficient to alter the conditions of her employment and create an abusive working environment. *See Filipovic v. K & K Express Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (four national origin-related comments made over the course of more than one year were insufficient to create a hostile work environment). Defendants are entitled to summary judgment on the hostile work environment claim.

## CONCLUSION

Defendants are entitled to summary judgment in their favor on the national origin discrimination and retaliation claims because Job fails to present a genuine issue of material fact that she was subjected to an adverse employment action, was treated less favorably than similarly situated employees, or that the reasons for defendants' decisions are pretextual. Summary judgment on the hostile work environment claim is appropriate because Job fails to present a

genuine issue of material fact that she was subjected to severe or pervasive conduct sufficient to alter the conditions of her employment and create an abusive working environment.

ENTER:

Suzanne B. Conlon
United States District Judge

April 21, 2010